2008-NMCA-019

176 P.3d 1160

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Thomas MARTINEZ, Defendant–Appellant.**

**No. 26,489.**

Court of Appeals of New Mexico.

Nov. 28, 2007.

Certiorari Denied, No. 30,813, Jan. 15, 2008.

Gary K. King, Attorney General, Santa Fe, NM, James C. Jacobsen, Assistant Attorney General, Albuquerque, NM, for Appellee.

John Bigelow, Chief Public Defender, Will O'Connell, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

SUTIN, Chief Judge.

{1} Defendant Thomas Martinez was convicted of conspiracy to intimidate a witness in violation of NMSA 1978, § 30–28–2 (1979), combined with NMSA 1978, § 30–24–3 (1997). He appeals, pursuant to his right under *State v. Franklin*, 78 N.M. 127, 129, 428 P.2d 982, 984 (1967), and *State v. Boyer*, 103 N.M. 655, 658–60, 712 P.2d 1, 4–6 (Ct. App.1985), to have all issues raised on appeal to this Court. He asserts that the evidence was insufficient to support his conviction.

{2} Tracy Johnson and Jamal Young were convicted of a double murder. Johnson's convictions were overturned by our Supreme Court because the State used an out-of-court statement of Young to convict Johnson after Young refused to testify. *See State v. Johnson*, 2004–NMSC–029, ¶ 2, 136 N.M. 348, 98 P.3d 998. While awaiting retrial, Johnson had two telephone conversations with Defendant, during which they agreed that Defendant would attend Johnson's retrial because his attendance might intimidate Young into not testifying against Johnson. These conversations were recorded by the detention center and were heard by the jury at Defendant's trial.

{3} Johnson told Defendant that he wanted Defendant at the retrial because Defendant's presence alone would "have dude shook to where-you know what I'm saying[.]" The discussions indicated that the person Johnson was referring to was Young, who had given a statement indicating that he was in the room with Johnson where the murders occurred, had seen Johnson holding a gun on the victims, had heard five shots while Young was out of the room, and had seen Johnson holding a tire iron or crowbar when Young returned to the room. Johnson said that Young was "the only one they got," and without Young's testimony at the retrial, it was a "guaranteed walk." Johnson's statements made it clear that, in his view, Defendant's presence would make a difference. Defendant's statements clearly indicated that he knew who Johnson was referring to, and Defendant in several statements agreed to attend the retrial for the purpose discussed. The conversations were not limited to Defendant simply sitting in the courtroom. While Johnson may have expressed that Defendant's presence alone would be enough to shake the witness up, Johnson made statements to the effect that Defendant was to attempt to make sure that the witness refrained from testifying in a manner that would harm Johnson. Once Defendant was present with the purpose of intimidating the witness, it would have been within the agreement to say or indicate something to the witness through a comment or body language. Statements made also indicated that Defendant had counseled other witnesses to have memory lapses.

When determining the sufficiency of the evidence, the court views the evidence in a light most favorable to the verdict, considering that the State has the burden of proof beyond a reasonable doubt. We view the evidence in the light most favorable to the verdict and disregard any contrary evidence. If evidence is in conflict, or credibility is at issue, we accept any interpretation of the evidence that supports the trial court's findings[.] As an appellate court, we do not substitute our judgment for that of the factfinder concerning the credibility of witnesses or the weight to be given their testimony. An

appellate court does not observe the demeanor of live witnesses, cannot see a shift of the eyes, sweat, a squirm, a tear, a facial expression, or take notice of other signs that may mean the difference between truth and falsehood to the [factfinder].

*State v. Nichols*, 2006–NMCA–017, ¶ 9, 139 N.M. 72, 128 P.3d 500 (first alteration in original) (internal quotation marks and citations omitted).

This standard requires us to view the evidence in the light most favorable to the State, resolving all conflicts and indulging all reasonable inferences in support of the jury's verdict. Additionally, circumstantial evidence may be used to establish a conspiracy. Generally, the agreement is a matter of inference from the facts and circumstances.

*State v. Tisthammer*, 1998–NMCA–115, ¶ 27, 126 N.M. 52, 966 P.2d 760 (internal quotation marks and citations omitted).

{4} While the conversations were replete with idiomatic and offensive language, the agreement that Defendant would appear in court to intimidate Young was sufficiently clear and understandable for the jury to determine that the two agreed on a plan to accomplish that result: shake the witness up and make him afraid to testify truthfully or to have a lapse in memory.

■ {5} A person violates the intimidation statute if he intimidates a person who is likely to be a witness in a judicial proceeding for the purpose of preventing such person from testifying, to abstain from testifying, or to testify falsely. § 30–24–3(A)(2). Under the conspiracy statute, the State need only prove that Defendant knowingly agreed with Johnson to intimidate Young and formed an intent to commit the intimidation offense. *See State v. Trujillo*, 2002–NMSC–005, ¶ 62, 131 N.M. 709, 42 P.3d 814; *State v. Leyba*, 93 N.M. 366, 367, 600 P.2d 312, 313 (Ct.App. 1979) (stating that the crime of conspiracy is complete when the prohibited agreement is reached; it does not require the completion of the act that is the object of the conspiracy). Viewing the evidence in the light most favorable to the verdict, and resolving all conflicts and indulging all reasonable inferences in favor of the verdict, *Nichols*, 2006–NMCA–017, ¶ 9, we hold that the conversa-

tions were clear enough to support the jury's finding that Defendant and Johnson entered into a conspiracy to intimidate Young into refusing to testify or testifying untruthfully, in violation of Sections 30–28–2 and 30–24–3(A)(2).

## CONCLUSION

{6} We affirm.

{7} **IT IS SO ORDERED.**

I CONCUR: MICHAEL D. BUSTAMANTE, Judge.

ROBINSON, Judge (dissenting).

{8} I cannot concur with the majority opinion. I dissent because I do not believe Defendant's conviction for conspiracy to threaten/intimidate a witness can stand under the facts of this case. A person cannot be guilty of intimidating a witness by going into a courtroom and just sitting there. That is not a crime. Even so, the so-called intimidation never took place because Defendant was arrested and jailed before the retrial of Tracy Johnson.

{9} Granted, the crime of conspiracy does not require the completion of the crime planned. It just requires the planning with another to do the crime. The problem, as I see it, is that if the act someone is planning is not a crime, one cannot be guilty of conspiracy to commit the non-criminal act.

{10} The United States Constitution ensures open and public, not secret, criminal trials. At a public trial, it should not be a crime to just go into a courtroom and sit there as a spectator. If the evidence from the jailhouse telephone calls demonstrated that Defendant was supposed to whisper or utter a threat to the witness, that would be sufficient for intimidation, but the facts of this case do not rise (or sink) to that level.

{11} The difference between this case and other cases is that, in other cases, the spectators performed some menacing act to intimidate a witness. In one instance, a large number of people-thirty to forty of them-leaned forward and grinned and grimaced when the witness was sworn. The trial court cleared the courtroom, removing all the in-

timidators. The appellate court held that the removal of those spectators did not violate the defendant's right to a public trial under the Sixth Amendment to the United States Constitution. *United States ex rel. Bruno v. Herold,* 408 F.2d 125, 127 (1969); *see also State v. Raymond,* 447 So.2d 51, 53 (La.Ct. App.1984) (holding that the right to a public trial is subject to the judge's power to exclude spectators from the courtroom during a witness' testimony where reasonably necessary to prevent pressures upon the witness, so that he or she may testify to facts material to the case, and found that a spectator's remark, "That's all right, you gonna get it[,]" constituted a threatening and disruptive act).

{12} In the present case, the convoluted, curse-laden, jailhouse conversations between a murder suspect and the person who was going to go sit in the courtroom at his behest, thereby trying to intimidate a witness against that murder suspect, shows nothing more than a spectator going into a courtroom and simply sitting there. There is no evidence whatsoever that Defendant was going to do anything but sit there. Such action is constitutionally protected by the Sixth Amendment to the United States Constitution. It is not a crime. It is a legal act. There should be no conspiracy to do a legal act.

{13} In *People v. Hargrove,* 60 A.D.2d 636, 400 N.Y.S.2d 184, 185 (1977), the court, although finding the error harmless under the circumstances, held that the removal of two spectators from the courtroom after the witness complained that they were watching him closely from the front row seats, constituted error infringing upon the defendant's constitutional right to a public trial. The court reasoned that neither of the spectators had overtly menaced the witness and, therefore, there was no intimidation or threatening of the witness.

{14} The majority suggests that Johnson and Defendant agreed that Defendant may do more than just sit there in the courtroom. I am afraid that the majority opinion is simply speculating. But, fortunately, we only prosecute people for conspiracy to do whatever illegal act they planned to do, not what we speculate they may do.

{15} For these reasons, I respectfully dissent.