IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2010-NMSC-016

Filing Date:   March 23, 2010

Docket No. 29,664

STATE OF NEW MEXICO,

　　　Plaintiff-Appellee,

v.

TRACY ALVIN JOHNSON,

　　　Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY
Jay W. Forbes, District Judge

Law Works, L.L.C.
John A. McCall
Albuquerque, NM

for Appellant

Gary K. King, Attorney General
Francine Ann Baca-Chavez, Assistant Attorney General
Santa Fe, NM

for Appellee

OPINION

SERNA, Justice.

I.　　INTRODUCTION

{1}　　This is Defendant Tracy Johnson's second direct capital appeal to the New Mexico Supreme Court, following his third trial for the murder of two individuals in Carlsbad in late 2000. Now, almost a decade after the crimes were committed, we affirm Defendant's convictions and sentences for two counts of first degree murder, one count of armed robbery, one count of conspiracy to commit armed robbery, and one count of possession of a firearm

1

by a felon.

## II. BACKGROUND

**{2}** We described the crimes with which Defendant was charged in our previous opinion in this case:

> The two victims [Anthony Granado and Ronnie Lujan] were beaten, robbed, and killed inside a residence belonging to one of them. One victim had been shot three times - once in the head, once in the chest, and once in the back - and had been struck in the head by a hard, curved object, consistent with a tire iron. The other victim had been shot twice - once in the head and once in the chest - and had also been struck in the head by a hard, curved object. A ballistics expert testified that all five bullets were fired from the same firearm. However, neither the murder weapon nor any of the items stolen from the house were ever recovered.

*State v. Johnson*, 2004-NMSC-029, ¶ 3, 136 N.M. 348, 98 P.3d 998.

**{3}** Defendant was tried by jury and found guilty on the same charges he appeals now, as well as evidence tampering. On appeal, this Court affirmed his conviction for evidence tampering, but reversed all of his other convictions on the grounds that the admission of a certain statement was not harmless error under the United States Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36 (2004), and remanded for retrial. 2004-NMSC-029, ¶ 2. Defendant's second trial ended in a mistrial. Defendant was tried a third time, found guilty on all charges, and sentenced to a total of 67 years in prison.

## III. DISCUSSION

**{4}** Defendant raised sixteen issues in this appeal, and we address each in turn.

### A. Admission of Recorded Jail Phone Calls

#### 1. Factual and Procedural History

**{5}** While being held in the Eddy County Detention Center ("Detention Center") awaiting his second trial, Defendant made multiple telephone calls, which were recorded because the Detention Center digitally records all calls placed by inmates for security purposes. When a call is placed, a digital message informs both parties to the call that it may be recorded and monitored, stating, "This call is from a correctional institution and is subject to monitoring and recording." The Detention Center interprets the decision of both parties to the call to continue talking after hearing the recorded message as their consent to the recording.

**{6}**     While in the Detention Center, Defendant placed two calls to Thomas Martinez ("Martinez") and one to Cynthia Flores ("Flores"), requesting that Martinez be present at Defendant's trial and that Flores ask another individual to be present at the trial, ostensibly to influence the testimony of the State's witnesses.  In a motion in limine, the State argued that the calls to Martinez and Flores were evidence that Defendant was engaging in witness intimidation to prevent certain witnesses from testifying about the true nature of Defendant's role in the crimes.  The court granted the State's  motion in limine, permitting recordings of the conversations to be played at trial, and admitting Defendant's statements as admissions of a party opponent and those of Martinez and Flores as non-hearsay statements made in furtherance of a conspiracy.[1]  A portion of one call to Martinez was admitted as an adoptive admission of Defendant.

**{7}**     Defendant argues that the calls were recorded in violation of his rights under the New Mexico Abuse of Privacy Act and the United States and New Mexico Constitutions and were improperly admitted at trial.

**2.      Standard of Review**

**{8}**     Our review of the admission of the telephone calls involves a mixed question of law and fact and is reviewed de novo.  *State v. Templeton*, 2007-NMCA-108, ¶ 8, 142 N.M. 369, 165 P.3d 1145.

**3.      Abuse of Privacy Act**

**{9}**     Defendant argues that the phone calls in question were recorded in violation of Section 30-12-1 of the Abuse of Privacy Act ("Act"), NMSA 1978, §§ 30-12-1 to -11 (1963, as amended through 1979), which prohibits the knowing interference of communication without lawful authority by "reading, interrupting, taking or copying any message, communication or report intended for another by telegraph or telephone without the consent of a sender or intended recipient thereof [.]" Section 30-12-1(C).  An exception is provided when "one of the parties to the communication has given prior consent to such interception, monitoring or recording of such communication."   Section 30-12-1(E)(3).

**{10}**    Two Court of Appeals opinions have addressed this question and held that the Act is not violated when a prisoner impliedly consents to the recording of calls placed from jail. In *State v. Coyazo*, 1997-NMCA-029, 123 N.M. 200, 936 P.2d 882, *cert. denied*, 123 N.M. 168, 936 P.2d 337 (1997), the defendant was in jail awaiting trial on first degree murder charges when he placed a call on the jail phone, next to which was a sign stating that all calls were subject to monitoring and recording.  The Court of Appeals consulted case law discussing the analogous federal statute, 18 U.S.C. § 2511, to conclude the defendant's

---

[1]Martinez was convicted of conspiracy to intimidate a witness. *State v. Martinez*, 2008-NMCA-019, 143 N.M. 428, 176 P.3d 1160.

consent to the recording could be shown by circumstantial evidence, namely, the sign next to the phone stating that the call was subject to recording. *Coyazo*, 1997-NMCA-029, ¶¶ 10, 13, 16. In *Templeton*, the Court of Appeals affirmed the *Coyazo* application of the exception in the Act to calls made in jail. The Court reiterated that consent may be implied where adequate notice has been given an inmate that phone calls are subject to recording. 2007-NMCA-108*,* ¶ 15 (stating that "adequate notice" includes "signs near telephones indicating that calls may be monitored, information in orientation or prison handbooks provided to inmates, forms signed by inmates consenting to monitoring procedures, [and] recordings on telephones that indicate the monitoring policy prior to the placing of a call"). The Court found that the recording of a call placed from the booking area, where no notice was given that calls could be recorded, violated the Act. *Id.* ¶ 16. However, the *Templeton* Court concluded that a call placed from inside the jail, where there were signs next to the phone stating that the call would be recorded and an automated recording informed the caller that the call was being recorded before the number dialed was connected, did not violate the Act because the defendant had consented to the recording by placing the call with the knowledge that it would be recorded. *Id.* ¶¶ 23-24.

**{11}** Defendant's briefs do not attempt to distinguish *Coyazo* and *Templeton* and do nothing more than reference arguments made in response to the State's motion in limine, which is an unacceptable appellate practice. *See* Rule 12-213(A)(4) NMRA. We agree with the Court of Appeals' analyses in *Coyazo* and *Templeton* concluding that the Act is not violated when phone calls placed from jail are recorded after the caller has been given notice that such will occur. Defendant impliedly provided prior consent to the recording of his calls by placing the calls with the knowledge that they were subject to recording and monitoring; indeed, we may say that Martinez and Flores also consented to the recording of the phone calls by accepting the calls after hearing the recording. The consent exception to the Act, Section 30-12-1(E)(3), applies to phone calls placed from jail when one or both parties impliedly consents, and thus Defendant's rights under the Act were not violated.

### 4.        United States Constitution:  Amendments Four, Five, and Six

**{12}** Defendant also claims that the recording of the phone calls violated his rights under the Fourth, Fifth, and Sixth Amendments of the United States Constitution. These claims are meritless.

**{13}** The Fourth Amendment protects against unreasonable searches and seizures. *See Burdeau v. McDowell*, 256 U.S. 465, 474-75 (1921). While the United States Supreme Court has not decided whether the monitoring and recording of prison phone calls violates the Fourth Amendment, the federal Circuit Courts which have addressed this question under the federal wiretapping statute, 18 U.S.C. § 2511, have found that it does not. Like the New Mexico Abuse of Privacy Act, the federal wiretapping statute contains an exception that permits recording when consent has been obtained. *Compare* NMSA 1978, § 30-12-1(E)(3) *with* 18 U.S.C. § 2511(2)(c). Federal courts have found implied consent under the wiretapping statute when jails notify inmates by sign or recording that their calls are being

4

monitored, and thus there exists no reasonable expectation of privacy in the phone call that would result in a Fourth Amendment violation. *See*, *e.g.*, *United States v. Verdin-Garcia*, 516 F.3d 884, 894 (10th Cir. 2008) (finding implied consent to recording based on circumstantial evidence that the defendant knew calls from jail phones were recorded); *United States v. Workman*, 80 F.3d 688, 693-94 (2d Cir. 1996) (consent implied when inmate notified that call would be recorded and still placed call); *United States v. Van Poyck*, 77 F.3d 285, 290-91 (9th Cir. 1996) (same); *Jaramillo v. Scribner*, 2009 WL 1444353, at *11 (E.D. Cal. 2009) (no reasonable expectation of privacy in a phone call from prison where a "recorded voice at the beginning of the telephone call alerted [the defendant] that the call may be monitored and recorded"). We agree that Defendant's Fourth Amendment rights were not violated by the recording of a phone call he made with notice that the call would be recorded.

**{14}** The Fifth Amendment protects against compelled self-incrimination and is violated by custodial interrogation resulting in a coerced confession. *See Miranda v. Arizona*, 384 U.S. 436, 467 (1966). Here, Defendant was in police custody, but he was not the subject of police interrogation when he placed these phone calls, nor was he coerced into conversing about witness intimidation on the jail phone. *See Coyazo*, 1997-NMCA-029, ¶ 17 (finding that "there is no evidence that [the defendant] was compelled, coerced, or improperly influenced into making the calls in question"); *see also United States v. Horr*, 963 F.2d 1124, 1126 (8th Cir. 1992) ("[The defendant] was aware of the telephone monitoring policy. It was his choice to use the telephone to conduct his illegal business. Having gambled by discussing his [illegal plan], [the defendant] cannot now be heard to complain that he lost."). Defendant's Fifth Amendment Rights were not violated.

**{15}** The Sixth Amendment protects an individual's right to counsel and the confidentiality of conversations between client and counsel. *See State v. Young*, 2007-NMSC-058, ¶ 2, 143 N.M. 1, 172 P.3d 138; *Coyazo*, 1997-NMCA-029, ¶ 19. None of the phone calls in question were to Defendant's counsel, and therefore Defendant's Sixth Amendment rights were not violated. *See Coyazo*, 1997-NMCA-029, ¶ 19.

**5.     New Mexico Constitution: Article II, Sections 10, 14, 15, and 17**

**{16}** Article II, Section 10 of the New Mexico Constitution protects against unreasonable searches and seizures. Although our Constitution generally provides greater protection than the Fourth Amendment, Article II, Section 10 is not violated by the recording of the jail phone calls because Defendant had no reasonable expectation of privacy in phone calls he knew were being recorded. *See Templeton*, 2007-NMCA-108, ¶ 26.

**{17}** Article II, Section 14 protects the right to counsel. As there was no call to Defendant's attorney involved, Section 14 was not violated. *See Coyazo*, 1997-NMCA-029, ¶ 19.

**{18}** Article II, Section 15 protects against coerced self-incrimination. Just as it did not

violate the Fifth Amendment, recording these calls did not violate Section 15. *See id.* ¶ 17.

**{19}** Article II, Section 17 protects freedom of speech. The First Amendment of the federal Constitution is not violated when prisons monitor inmates' phone calls for prison security purposes. *See*, *e.g.*, *United States v. Vasta*, 649 F. Supp. 974, 989-90 (S.D.N.Y. 1986). Defendant offers no argument that Article II, Section 17 provides greater speech protections in this case, *see State v. Gomez*, 1997-NMSC-006, ¶ 23, 122 N.M. 777, 932 P.2d 1, and thus we need not determine whether Section 17 was violated by prison officials recording the phone calls.

### 6. Admission of the Calls

**{20}** Having determined that the recording of the phone calls should not be suppressed for violating the Act or the United States or New Mexico Constitutions, we turn to whether the calls were admitted for a proper purpose. Defendant argues that the calls were improperly admitted and that an expert was necessary to explain the colloquial language used in the calls. The State argues that the calls were properly admitted as the non-hearsay admissions of a party opponent or for purposes other than the truth, such as evidence of other bad acts for proving motive or intent.

**{21}** The district court did not err in admitting the calls. The statements of Defendant were admitted as non-hearsay statements of a party opponent. Rule 11-801(D)(2)(a) NMRA. The statements of the other party to the phone conversations were admitted as adoptive statements of a co-conspirator in furtherance of the conspiracy, Rule 11-801(D)(2)(e), and, in one case, as an adoptive admission of Defendant. Rule 11-801(D)(2)(b). *Cf. State v. Macias*, 2009-NMSC-028, ¶ 36, 146 N.M. 378, 210 P.3d 804 (holding that the district court abused its discretion in admitting recorded phone calls placed from a jail phone to which no exception or exemption to the hearsay rule applied). Defendant need not have been charged with conspiracy to intimidate a witness in order for this exception to the hearsay rule to be invoked to admit evidence. *See State v. Farris*, 81 N.M. 589, 589-90, 470 P.2d 561, 561-62 (Ct. App. 1970). We hold that these statements were properly admitted under the aforementioned hearsay exceptions.

### 7. Manner of Admission

**{22}** Defendant also argues that he received ineffective assistance of counsel because no objection was made to the lack of an expert witness to explain the language used in the recorded calls. Establishing a prima facie case of ineffective assistance of counsel requires a defendant to show (1) an error by trial counsel, and (2) that the defendant was prejudiced by that error. *See State v. Grogan*, 2007-NMSC-039, ¶ 11, 142 N.M. 107, 163 P.3d 494. As the Court of Appeals noted in its review of two of these conversations in Martinez's trial for conspiracy to intimidate a witness:

> While the conversations were replete with idiomatic and offensive

6

language, the agreement that [Martinez] would appear in court to intimidate [the witness] was sufficiently clear and understandable for the jury to determine that the two agreed on a plan to accomplish that result: shake the witness up and make him afraid to testify truthfully or to have a lapse in memory.

*Martinez*, 2008-NMCA-019, ¶ 4. There was no error in admission of the phone calls without the use of an expert. As there was no error by trial counsel in not objecting to the lack of expert witness in the admission of the phone conversations, Defendant's ineffective assistance of counsel claim fails.

## B.      Use of Leg Shackles During Trial

### 1.      Background

**{23}**    Defendant was in leg irons for the duration of the trial. The record does not contain the reason behind this security measure. Defendant requested that the leg irons be removed if he were to testify. Citing safety concerns and recent violent incidents in other states involving unsecured defendants, the district court said it would not "override the detention center" and remove Defendant's leg irons if he were to testify. Defendant did not testify. In addition, five security guards were present in the courtroom during the trial, although the reason for their presence is not in the record. Defendant did not object either to the presence of the security officers or the use of leg irons, other than to request the shackles be removed were Defendant to testify.

**{24}**    Defendant now argues that the use of leg irons during trial violated his due process rights under the United States and New Mexico Constitutions, as well as his right to a fair and impartial jury and a presumption of innocence under the New Mexico Constitution. Defendant does not argue that the presence of the security officers violated his rights, but does acknowledge that some level of security was necessary during trial in stating that either the use of shackles or the presence of the guards "would be sufficient to guarantee any safety issues related to the trial, but not both."

### 2.      Standard of Review

**{25}**    Defendant did not object to the use of leg irons during the trial. As it was not preserved, we review this issue for fundamental error. *State v. Holly*, 2009-NMSC-004, ¶ 40, 145 N.M. 513, 201 P.3d 844.

> Error that is fundamental must be such error as goes to the foundation or basis of a defendant's rights or must go to the foundation of the case or take from the defendant a right which was essential to his defense and which no court could or ought to permit him to waive. Fundamental error only applies in exceptional circumstances when guilt is so doubtful that it would shock the

7

judicial conscience to allow the conviction to stand.

*State v. Gallegos*, 2009-NMSC-017, ¶ 27, 146 N.M. 88, 206 P.3d 993 (internal quotation marks and citations omitted).

### 3.    Analysis

**{26}**    The United States Supreme Court concluded that visible shackling is "inherently prejudicial," *Deck v. Missouri*, 544 U.S. 622, 635 (2005), and stated that "the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial[,]" including security concerns. *Id*. at 629. The important principles behind this rule are: (1) the presumption of innocence, *id*. at 630 ("Visible shackling undermines the presumption of innocence and the related fairness of the factfinding process."); (2) the right to counsel, *id*. at 631 (stating that shackles "can interfere with a defendant's ability to participate in his own defense, say, by freely choosing whether to take the witness stand on his own behalf"); and (3) the dignity of the judicial process. *Id*. ("[T]he use of shackles at trial affronts the dignity and decorum of judicial proceedings that the judge is seeking to uphold." (internal quotation marks and modifications omitted)). State interests may outweigh these individual rights, but a court must make this determination after a review of each case's circumstances. *Id*. at 632.

**{27}**    In *Deck*, the Court found that the defendant was prejudiced by visible shackling during the sentencing phase of his trial. The record was clear that the jury knew the defendant was shackled, *id*. at 634, and the prosecution failed to meet its burden of proving beyond a reasonable doubt that the inherently prejudicial shackling did not contribute to the guilty verdict. *Id*. at 635.

**{28}**    In contrast, where a defendant is restrained in a manner not visible to the jury, prejudice is not presumed. In *United States v. Wardell*, 591 F.3d 1279, 1294 (10th Cir. 2009), the Tenth Circuit refused to presume prejudice when a defendant was required to wear a stun belt that was not visible to the jury. Similarly, in *Holly*, we found no fundamental error when a single juror may have viewed the defendant in handcuffs and defense counsel raised the issue to the judge but did not request a mistrial, removal of the juror, or a finding of prejudice. 2009-NMSC-004, ¶¶ 40-41.

**{29}**    In this case, the district court did not commit fundamental error by keeping Defendant in shackles for the duration of the trial. There is no indication the jury saw the leg irons, and thus the factors tending to show prejudice are not present. *See id*. ¶¶ 40-42. As the jury was not aware of Defendant's restraint, Defendant's presumption of innocence was not violated. *See State v. Sluder*, 82 N.M. 755, 756-57, 487 P.2d 183, 184-85 (Ct. App. 1971). For the same reason, the dignity of the judicial process was not affected. *See Deck*, 544 U.S. at 630. Defendant's right to counsel was not violated, as the record does not reveal that Defendant's decision not to testify was a result of the district court's determination that

8

Defendant posed too great a security risk to be unshackled rather than Defendant's own free choice not to testify. *See id.* at 631. While the record seems to indicate the decision to shackle Defendant was the Department of Corrections and not the district courts,[2] the district court considered Defendant to pose a safety threat and stated it would not remove the leg irons. We do note, however, that this procedure is rarely justified. *See id.* at 628 (counseling that shackling "should be permitted only where justified by an essential state interest specific to each trial" (internal quotation marks and citation omitted)). In the future, the district court and the parties should ensure the record reflects the reasons behind security measures undertaken during trial and the ways in which the defendant's constitutional rights are protected or the state interests that outweigh the defendant's individual rights.

## C.      Denial of Challenges for Cause During Jury Selection

### 1.      Background

**{30}**   Defendant argues that the district court's denial of his requests to strike two jurors, Jurors 28 and 35, for cause violated Defendant's right to an impartial jury. Juror 28's cousin was murdered and Juror 28 did not believe the perpetrator's sentence was sufficient. Juror 28 indicated that he would follow the law as stated by the judge and be fair in his determination of guilt, though it would be difficult for him to ignore the victims' families' feelings. Juror 35's friend was murdered nine years prior, and Juror 35 stated that the feelings that arose after the murder would be "rekindled" during trial. Juror 35 stated those feelings would not cause her to be unfair to either side. The district court denied Defendant's attempts to have Jurors 28 or 35 struck for cause. As a result, Defendant used peremptory strikes to remove Jurors 28 and 35.

### 2.      Standard of Review

**{31}**   "[W]e review the trial court's rulings regarding the selection of jurors for an abuse of discretion because the trial court is in the best position to assess a juror's state of mind, based upon the juror's demeanor and credibility." *State v. Allen*, 2000-NMSC-002, ¶ 83, 128 N.M. 482, 994 P.2d 728 (filed 1999) (internal quotation marks and citations omitted). "An abuse of discretion exists when the trial court acted in an obviously erroneous, arbitrary, or unwarranted manner." *Gallegos*, 2009-NMSC-017, ¶ 21 (internal quotation marks and alterations omitted). Where the trial court clearly abused its discretion in failing to excuse a juror who could not be impartial, prejudice is presumed if the petitioner used all peremptory challenges on potential jurors who could be excused for cause before a jury was

---

[2]Under Rule 5-115(C) NMRA, the appearance of a defendant before the court in "any . . . item which, if visible to the jury, would prejudice the defendant in the eyes of the jury" is not permitted "[e]xcept by order of the court[.]" While the district court may take the views of the executive branch into consideration, the judge must make the determination about the propriety and necessity of restraint devices in each particular case.

seated. *Fuson v. State*, 105 N.M. 632, 634, 735 P.2d 1138, 1140 (1987). The challenging party bears the burden of proving juror bias. *State v. Baca*, 99 N.M. 754, 756, 664 P.2d 360, 362 (1983).

### 3.      Analysis

**{32}**      The jury may not consider the consequences of its verdict. *State v. Brown*, 1997-NMSC-029, ¶ 12, 123 N.M. 413, 941 P.2d 494. In this case, although both Jurors 28 and 35 indicated the trial would cause them to think about the murders of their loved ones, both also indicated that they would be able to be fair and follow the instructions of the judge. The district court denied the request based on this fact and we will not second-guess his judgment, and Defendant failed to demonstrate that his use of peremptory strikes on Jurors 28 and 35 resulted in prejudice. *Cf. Rivera v. Illinois*, ___ U.S. ___, ___, 129 S. Ct. 1446, 1453 (2009) ("If a defendant is tried before a qualified jury composed of individuals not challengeable for cause, the loss of a peremptory challenge due to a state court's good-faith error is no matter of federal constitutional concern."). As we will not presume prejudice and Defendant has failed to show prejudice, we hold that the district court did not abuse its discretion in failing to strike the jurors for cause.

### D.      Voir Dire Questions

### 1.      Background

**{33}**      During voir dire, the prosecutor posed questions to the venire about accessory liability using hypotheticals. The first hypothetical, to which Defendant did not object, was a scenario about three people stealing an air conditioner. The second hypothetical involved a homicide, and the prosecutor initially used Defendant's name, stating, "Let's just take for instance Mr. Johnson is not the person who pulled the trigger." Defendant objected. In a sidebar, the district court permitted the question without use of Defendant's name, a restriction with which the prosecutor complied. No juror admitted to being unable to follow the law regarding accessory liability. Defendant now argues this question amounted to prosecutorial misconduct that deprived him of a fair trial.

### 2.      Standard of Review

**{34}**      We apply an abuse of discretion standard of review to the district court's "determination of how voir dire should be conducted, because assuring the selection of an impartial jury may require that counsel be allowed considerable latitude in questioning prospective [jury] members." *Allen*, 2000-NMSC-002, ¶ 83 (internal quotation marks and citations omitted; alteration in original). "The trial court, who is listening first hand to counsel's questions and the panel members' responses, is in the best position to determine whether voir dire has sufficiently exposed any biases that may preclude jurors from acting fairly and impartially." *State v. Martinez*, 2002-NMCA-036, ¶ 35, 131 N.M. 746, 42 P.3d 851. We will reverse only if a clear abuse of discretion by the district court in the conduct

of voir dire resulted in prejudice to defendant. *State v. Clark*, 1999-NMSC-035, ¶ 20, 128 N.M. 119, 990 P.2d 793.

### 3.       Analysis

**{35}**    The Sixth Amendment of the United States Constitution guarantees defendants the right to trial by a fair and impartial jury and is implicated during voir dire. *State v. Sosa*, 1997-NMSC-032, ¶¶ 14, 15, 123 N.M. 564, 943 P.2d 1017 (finding that the trial judge's decision not to permit defense questioning on the venire's attitude to gangs was not an abuse of discretion). In *Clark*, we held the trial court did not abuse its discretion by permitting the prosecutor to ask whether an individual could impose the death penalty, as "this questioning did not commit jurors to return a death sentence." 1999-NMSC-035, ¶ 20.

**{36}**    In this case, the prosecutor's questioning whether the potential jurors could follow the law did not bind them to return a guilty verdict. There is no indication that the prosecutor's questions prejudiced the jury. The district court did not abuse its discretion by permitting the use of hypotheticals during the voir dire in a way that resulted in prejudice to Defendant.

### E.       Exclusion of Witness from Courtroom

### 1.       Background

**{37}**    Defendant's father was included on the witness lists for both parties. During the first trial, the district court imposed the witness sequestration rule but permitted witnesses who were not going to be recalled to stay in the courtroom after they testified. The district court, in the first trial, ruled that Defendant's father, though not called by either party as part of a case-in-chief and Defendant's only relative able to be present at trial, was potentially a rebuttal witness for the State and therefore remained under sequestration. During a bench conference in the third trial, Defendant requested that his father, who had not been called as a witness, be allowed to sit in the courtroom, as the victims' mothers, witnesses who had already testified, were so permitted. The district court denied the request, invoking the prior ruling on witness sequestration. Defendant implicitly argues that his father was excluded from the courtroom because he is African-American.

### 2.       Standard of Review

**{38}**    Although the parties describe the issue as whether the district court abused its discretion in excluding members of the general public from the courtroom, our review is whether the district court abused its discretion by imposing the witness sequestration rule. *See State v. Shirley*, 2007-NMCA-137, ¶ 33, 142 N.M. 765, 170 P.3d 1003. "We will not disturb the decision of the trial court absent a clear abuse of this discretion and prejudice to the complaining party." *State v. Hernandez*, 115 N.M. 6, 18, 846 P.2d 312, 324 (1993).

### 3. Analysis

{39}    The witness sequestration rule permits the exclusion of witnesses from the courtroom to prevent the tailoring of testimony that may occur as a result of listening to the trial. Rule 11-615 NMRA (permitting the exclusion of witnesses from the courtroom "so that they cannot hear the testimony of other witnesses"); *see also State v. Trevino*, 113 N.M. 804, 809, 833 P.2d 1170, 1175 (Ct. App. 1991). As evidenced by the concerns of witness intimidation, discussed *supra* Section III.A., the district court was validly concerned about the integrity of the testimony at trial. The district court did not abuse its discretion in upholding the witness sequestration rule during this trial with the effect that Defendant's father was excluded from the courtroom, and Defendant did not show that he was prejudiced by the imposition of the rule. There is no basis in the record for the allegation that Defendant's father was excluded because of his race.

### F.    Admission of Testimony

### 1.    Standard of Review

{40}    The trial court's admission or exclusion of evidence is reviewed on an abuse of discretion standard. *Macias*, 2009-NMSC-028, ¶ 16. On appeal, the reviewing court will not consider issues not raised in the trial court unless the issues involve matters of jurisdictional or fundamental error. Rule 12-216(B) NMRA.

### 2.    Analysis

{41}    Relevant evidence is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 11-401 NMRA. Relevant evidence is admissible. Rule 11-402 NMRA. Relevant evidence will be excluded, however, if its probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence." Rule 11-403 NMRA. Evidence that reflects on a witness' credibility is relevant. *See*, *e.g.*, *State v. Christopher*, 94 N.M. 648, 651, 615 P.2d 263, 266 (1980). "Any doubt whether the evidence is relevant should be resolved in favor of admissibility." *State v. Balderama*, 2004-NMSC-008, ¶ 23, 135 N.M. 329, 88 P.3d 845.

### a.    Testimony Regarding Fight at the Hub

{42}    Defendant argues that the admission of testimony about a fight, to which Defendant was a party, at the Hub, a liquor store, hours prior to the murders was not relevant and more prejudicial than probative. The State argues that it was relevant and probative to whether Defendant and his associates acted in concert the night of the murders.

{43}    Witness Jeff Hoff ("Hoff") testified about an incident at the Hub many hours prior

to the murders. According to Hoff, Defendant, Coley Ingram ("Coley"), Jamall Young ("Young"), Wayne Ingram ("Wayne"), and Hoff drove to the Hub and Defendant, Coley, and Young entered into an altercation with a group of individuals in the parking lot, at the end of which Defendant punched a woman. Defendant objected that the testimony was not relevant, and the district court overruled the objection. Defendant did not object under any other rule of evidence, and thus our review is limited to whether the testimony was relevant under Rule 11-401. *See State v. Lopez*, 84 N.M. 805, 809, 508 P.2d 1292, 1296 (1973) (stating that an issue is preserved for appeal only when a timely objection that alerts the trial court of the nature of the claimed error is made and invokes an intelligent ruling thereon). Because we find that the Hub fight testimony has at least a small tendency to make the existence of the fact that Defendant and his cohorts acted in concert on the night of the murders, we hold that the district court did not err in admitting this testimony.[3]

### b.       Testimony Regarding Memory of Crimes

**{44}** Defendant further argues that Hoff's testimony about his state of mind after the murders was more prejudicial than probative and its admission should result in reversal. This issue was not preserved below, and thus our review is for fundamental error. *See State v. Ervin*, 2008-NMCA 016, ¶ 14, 143 N.M. 493, 177 P.3d 1067. The testimony about how often Hoff thinks of the murders is probative because of the lapse of time since the murders were committed and to explain the discrepancies between Hoff's testimony and prior statements he had given to the police. There was no fundamental error in the admission of this testimony.

### c.       Testimony Regarding Time Before Going to Police

---

[3]We note that this testimony arguably falls under the rubric of propensity testimony. Under Rule 11-404(B) NMRA, evidence of prior bad acts may not be admitted solely "to prove the character of a person in order to show action in conformity therewith." *See State v. Gallegos*, 2007-NMSC-007, ¶ 22, 141 N.M. 185, 152 P.3d 828 ("[t]he rule prohibits the use of otherwise relevant evidence when its sole purpose or effect is to prove criminal propensity."). Before admitting such evidence, the proponent of the evidence must give notice of his or her intent to do so and "identify and articulate the consequential fact to which the evidence is directed before it is admitted." *Id.* If the trial court finds the evidence is admissible under Rule 11-404(B), it must still determine whether it satisfies the requirements of Rule 11-403. *Gallegos*, 2007-NMSC-007, ¶ 22. However, we note that even if Defendant had objected under Rule 11-404(B), and even if we had found error in the district court's admission of the evidence, we would have found such error to be harmless, as there is not a reasonable probability that the error affected the jury verdict. *See State v. Torrez*, 2009-NMSC-029, ¶ 33, 146 N.M. 331, 210 P.3d 228 ("To determine whether a non-constitutional error was harmless, we must assess whether there is no reasonable probability that the error affected the verdict.").

13

**{45}** On cross-examination, Defendant questioned Hoff about why he waited four days before reporting the crime to the police. On re-direct, the State asked Hoff to explain why he had waited. Defendant objected to the question as being "irrelevant and immaterial." The district court permitted the questions as relevant.

**{46}** Defendant attempted to impeach Hoff's credibility during cross-examination, and the State's questions about the four-day absence were asked to rehabilitate the witness. The testimony was relevant to the issue of the witness' credibility, and thus the district court did not abuse its discretion by permitting questioning into Hoff's reasons for waiting multiple days before reporting the crime.

### G.      Motion for Mistrial

### 1.      Denial of Motion for Mistrial Made At Trial

### a.      Background

**{47}** Wayne, who was not charged in the crimes, refused to testify when called as a witness by the State, stating that he had no memory of the events on the day of the murders and that he felt threatened. Defendant moved for a mistrial on the grounds that the jury was prejudiced by the fear in the courtroom that prevented Wayne from testifying. The district court denied the motion for mistrial. With the jury absent, the district court ruled that Wayne was "practically unavailable" and permitted Wayne's testimony from the first trial to be played because "the testimony he gave was voluntary, it was given under oath, he was cross-examined, it has not been recanted." After the recorded testimony was played, the district court permitted both parties to cross-examine Wayne using leading questions.

**{48}** Defendant argues that the district court erred by failing to grant a mistrial, as finding Wayne unavailable and admitting his prior testimony deprived Defendant of his Confrontation Clause rights, and that the testimony was wrongfully admitted under the forfeiture by the wrongdoing exception to the hearsay rule. The State argues that the prior testimony was properly admitted under the former testimony exception to the hearsay rule.

### b.      Standard of Review

**{49}** A denial of a motion for mistrial is reviewed under an abuse of discretion standard. *State v. McDonald*, 1998-NMSC-034, ¶ 26, 126 N.M. 44, 966 P.2d 752.

### c.      Analysis

**{50}** The record is clear that the district court admitted Wayne's recorded testimony under the former testimony exception to the hearsay rule, Rule 11-804(B)(1) NMRA. To admit former testimony under this exception, the court must first determine that the witness is unavailable. One way in which a witness may be found unavailable is if she or he "testifies

14

to a lack of memory of the subject matter of the declarant's statement." Rule 11-804(A)(3). If a witness is determined to be unavailable, the former testimony exception permits the introduction of testimony "taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross or redirect examination." Rule 11-804(B)(1). The purpose of the cross-examination requirement is to ensure that a defendant's Confrontation Clause rights are not violated. *See Crawford*, 541 U.S. at 53-54.

**{51}** In this case, the district court did not abuse its discretion by finding Wayne was unavailable to testify based on his repeated refusal to testify due to a purported lack of memory. *See State v. Gonzales*, 112 N.M. 544, 551, 817 P.2d 1186, 1193 (1991) (holding that the district court did not abuse its discretion by finding a witness who "repeatedly stated he could not remember events and details about which he previously testified" unavailable and admitting the prior testimony under Rule 11-804(B)(1)). Defendant's Confrontation Clause rights were not violated because Defendant had an opportunity to cross-examine Wayne, and the same motive to develop Wayne's testimony, during Defendant's first trial on these same charges. In addition, the court permitted Defendant to cross-examine Wayne after the tape was played, further dispelling any concerns about Defendant's Confrontation Clause rights. The district court did not abuse its discretion by admitting Wayne's former testimony under the prior testimony exception to the hearsay rule.

## 2. Failure to Grant a Mistrial Sua Sponte

### a. Background

**{52}** Defendant argues that the district court erred by not conducting evidentiary hearings before one juror withdrew and to determine why two witnesses, Wayne and Coley, were in fear. Midway through trial, one juror requested, in chambers, that she be excused because her daughter was the Ingrams' neighbor. Defendant was not present, but his counsel gave a "full and complete waiver" to Defendant's presence. Defendant did not object to his counsel's actions. Wayne testified for the State, and Coley testified for the defense. Neither said who or what was making them afraid.

### b. Standard of Review

**{53}** As Defendant did not move for a mistrial on these grounds during trial, our review is for fundamental error. *See Gallegos*, 2009-NMSC-017*,* ¶ 27.

### c. Analysis

**{54}** In *Gallegos*, we determined there was no fundamental error when the district court did not order a mistrial sua sponte after two jurors asked the bailiff if the defendant would plead, and the judge conducted individual voir dire and offered a curative instruction. *Id.* ¶ 29. The judge took "necessary steps to determine whether bias or prejudice existed in the

15

minds of the jurors[.]" *Id.* Here, the district court did not commit fundamental error by failing to declare a mistrial sua sponte when one juror was excused because she was fearful of repercussions against her daughter, she said on the record that she could not be impartial, no other jurors knew she was making such a request, and Defendant waived his right to be present when the district court dismissed the juror.

{55} Defendant also argues that the court should have declared a mistrial sua sponte because Coley and Wayne said they were scared to testify. As cited to us by Defendant, "It is axiomatic in our system of justice that an individual is entitled to a fair trial – not a perfect one." *United States v. Mannie*, 509 F.3d 851, 857 (7th Cir. 2007) (finding, under abuse of discretion review, that trial court erred by not granting mistrial when courtroom atmosphere was extremely disruptive and trial court's voir dire and curative instructions were not enough). Here, we are reviewing for fundamental error, and the failure of the district court to conduct an unrequested evidentiary hearing does not "shock the conscience" such that reversal is required.

## H.     Denial of Motion for Directed Verdict

### 1.     Background

{56} The armed robbery charge required the State to prove that Defendant took and carried away the property of the victims, that Defendant was armed, and that Defendant took the property by use or threat of force or violence. NMSA 1978, § 30-16-2 (1973). Because the State argued that Defendant committed the armed robbery under an accomplice theory, it had to show that Defendant intended the crime to be committed and helped, encouraged, or caused the crime to be committed. NMSA 1978, § 30-1-13 (1972).

### 2.     Standard of Review

{57} We review denials of directed verdicts by asking

> whether sufficient evidence was adduced to support the underlying charge. The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction. When considering the sufficiency of the evidence, this Court does not evaluate the evidence to determine whether some hypothesis could be designed which is consistent with a finding of innocence. Instead, we view the evidence as a whole and indulge all reasonable inferences in favor of the jury's verdict while at the same time asking whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*State v. Sena*, 2008-NMSC-053, ¶ 10, 144 N.M. 821, 192 P.3d 1198 (internal quotation

16

marks, citations, and alterations omitted).

**3.     Analysis**

**{58}**     We hold that "substantial evidence of either a direct or circumstantial nature," *id.*, was presented at trial to permit the jury to find Defendant guilty beyond a reasonable doubt. The testimony presented at trial that supports Defendant's armed robbery conviction includes:  Hoff's testimony about the conversation in the bathroom between Defendant and Coley; Hoff's testimony that Defendant said, "[t]his is a jack" upon entering the victims' room; Hoff's testimony about Young bringing items out of the house and into the Defendant's car; Wayne's recorded testimony that he saw a phone, pager, and jewelry at Defendant's house after the robbery but had not seen Defendant with such items prior to the murders; David Mata's testimony that Defendant requested he hide Defendant's guns shortly after the murder and robbery;  Coley's recorded testimony that Defendant thought the victim was in possession of Defendant's gun; the State's witnesses who impeached Coley's testimony exculpating Defendant, including the prison officials who testified that Coley had stated that Defendant had the gun with which he committed the murders; testimony that Defendant dominated his relationship with Coley; recorded phone calls in which Coley told his family he did not commit the crimes, although he confessed to the same; recorded phone calls in which Defendant requested other individuals intimidate the witnesses against him; and testimony of multiple witnesses, including Defendant himself, that Defendant had remained in the room during the commission of the crimes.

**{59}**     Although evidence was presented contrary to Defendant's conviction, is it not our role to "evaluate the evidence to determine whether some hypothesis could be designed which is consistent with a finding of innocence." *Id.*  The testimony presented exculpating Defendant was his own recorded testimony from the first trial and Coley's testimony that Defendant played no role in the robbery and that his previous testimony, in which he stated that Defendant committed the crimes, was false.  Viewing the evidence as a whole and in the light most favorable to the verdict, there is sufficient evidence for a reasonable jury to have found Defendant guilty of armed robbery beyond a reasonable doubt.

**I.     Aiding and Abetting Jury Instruction**

**{60}**     Defendant argues that the district court committed error in issuing the aiding and abetting jury instruction, having objected based on his "great hope" that we change the instruction.  The district court gave the aiding and abetting uniform jury instruction, UJI 14-2821 NMRA, approved by this Court at the time of the trial, and Defendant has not convinced us of any need to revisit that instruction.  There is no error.

**J.     Sufficiency of the Evidence**

**{61}**     Defendant attempts to revive his arguments regarding the sufficiency of the evidence made during his first appeal to this Court.  This is impermissible*,* Rule 12-213(A)(4); *see*

17

*also Clark*, 1999-NMSC-035, ¶ 3 ("[W]e address only those issues properly before this Court within the briefs of the parties."), and thus we do not review this issue.

## K.      Abandoned Issues

**{62}**      Defendant abandoned three issues, the admission of hearsay testimony regarding a conversation between Hoff and a friend, the admission of Defendant's prior criminal record, and the State's use of rebuttal witnesses, by failing to discuss them in his brief. *See Clark*, 1999-NMSC-035, ¶ 3.

## IV.      CONCLUSION

**{63}**      Defendant's convictions are affirmed.

**{64}      IT IS SO ORDERED.**

 

_____
**PATRICIO M. SERNA, Justice**

**WE CONCUR:**

_____
**EDWARD L. CHÁVEZ, Chief Justice**

_____
**PETRA JIMENEZ MAES, Justice**

_____
**RICHARD C. BOSSON, Justice**

_____
**CHARLES W. DANIELS, Justice**

**Topic Index for *State of New Mexico v. Tracy Alvin Johnson*, No. 29,664**

| **AE** | **APPEAL AND ERROR** |
|---|---|
| AE-AP | Appellate Rules and Procedure |
| AE-FE | Fundamental Error |
| AE-PA | Preservation of Issues for Appeal |
| AE-SR | Standard of Review |
| AE-SB | Substantial or Sufficient Evidence |
| | |
| **CT** | **CONSTITUTIONAL LAW** |
| CT-FA | Fourth Amendment |

| | |
|---|---|
| CT-FS | Freedom of Speech |
| CT-FT | Fair Trial |
| CT-NM | New Mexico Constitution, General |
| CT-RF | Right to Confrontation |
| CT-SL | Self-Incrimination |
| CT-SU | Suppression of Evidence |
| CT-TJ | Trial by Jury |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-AC | Accessory |
| CL-AA | Aiding or Abetting |
| CL-FM | Felony Murder |
| CL-PS | Possession |
| CL-RB | Robbery |
| | |
| **CA** | **CRIMINAL PROCEDURE** |
| CA-CQ | Courtroom Security |
| CA-EA | Effective Assistance of Counsel |
| CA-EX | Expert Witness |
| CA-FT | Fair Trial |
| CA-PU | Public Trial |
| CA-RV | Right against Self-Incrimination |
| CA-RT | Right to Confrontation |
| CA-SE | Substantial or Sufficient Evidence |
| CA-WI | Wiretaps |
| CA-WT | Witnesses |
| | |
| **EV** | **EVIDENCE** |
| EV-AE | Admissibility of Evidence |
| EV-AV | Availability of Witness |
| EV-CR | Credibility of Witnesses |
| EV-HR | Hearsay Evidence |
| EV-IM | Impeachment |
| EV-PB | Probative Value v. Prejudicial Effect |
| EV-RC | Relevancy, Materiality, and Competency |
| EV-SS | Substantial or Sufficient Evidence |
| EV-WT | Witnesses |
| | |
| **JR** | **JURIES** |
| JR-IJ | Impartial Jury |
| JR-JS | Jury Selection |
| JR-VD | Voir Dire |
| | |
| **JI** | **JURY INSTRUCTIONS** |