This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-42317

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**BRIAN STENERSON,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Courtney Weaks, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Van Snow, DeputySolicitor General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Thomas J. Lewis, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**WRAY, Judge.**

{1}     This matter was submitted to the Court on Defendant's brief in chief pursuant to the Administrative Order for Appeals in Criminal Cases from the Second, Eleventh, and Twelfth Judicial District Courts in *In re Pilot Project for Criminal Appeals*, No. 2022-002, effective November 1, 2022. Following consideration of the brief in chief, the Court assigned this matter to Track 2 for additional briefing. Now having considered the brief in chief, the answer brief, and the reply brief, we affirm for the following reasons.

**{2}**      Defendant appeals his conviction for criminal sexual penetration of a child under thirteen (CSP). [BIC 1] Defendant first asserts that the district court erred in denying his motion for a mistrial. [BIC 9] The district court's ruling on a motion for a mistrial is addressed to the sound discretion of the district court and will not be disturbed absent a showing of an abuse of discretion. *See State v. McDonald*, 1998-NMSC-034, ¶ 26, 126 N.M. 44, 966 P.2d 752. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *State v. Leeson*, 2011-NMCA-068, ¶ 32, 149 N.M. 823, 255 P.3d 401 (internal quotation marks and citation omitted).

**{3}**      Defendant contends that the State's DNA expert violated a district court order by referring to "sperm" cells during her testimony. [BIC 9] Without filing a motion in limine and just prior to her testimony, Defendant moved orally at trial to exclude any reference to "sperm" cells during the testimony of the State's DNA expert. [BIC 10] Defendant argued that "the reference would mislead the jury to believe that her analysis had found seminal fluid" in the DNA swabs of C.B. (Victim) and, "[i]n this context, the term 'sperm cells' does not denote the presence of seminal fluid." [BIC 10; AB 9] The State argued that "because Defendant's DNA was found in an epithelial fraction, the witness could not 'explain what that is without talking about the difference between [sperm and epithelial fractions] and how they're separated.'" [AB 10] The district court initially agreed with Defendant that the jury could be misled and instructed the State's expert to use the terms "S cell fraction" and "E cell fraction." [Id.]

**{4}**      During the expert's testimony, she referred to "sperm" a few times while describing a "standard scientific process within [her] laboratory" to the jury. [12-1-23 CD 10:58:56-11:00:11, 11:07:15-31] In the subsequent question to the State's expert, the prosecutor also used the term, prompting Defendant to move for a mistrial. [12-1-23 CD 11:00:12-52] Based on the ensuing sidebar and a tacit acknowledgment in Defendant's briefing, it appears that either the prosecutor or the State's expert did not believe the district court's oral ruling included instances when the expert's testimony related to general scientific procedure. [12-1-23 CD 11:01:34-49, 11:06:50-11:08:14; AB 12]

**{5}**      After hearing argument on the oral motion and obtaining additional information from Defendant's DNA expert, the district court reversed its previous ruling. [12-1-23 CD 11:12:48-11:21:11, 11:25:00-10] The district court acknowledged that it was confused when it gave its prior oral ruling, but its confusion was apparently alleviated after learning what testimony the State's expert was going to provide and questioning Defendant's DNA expert. [12-1-23 CD 11:15:10-21, 11:21:11-30] The State represented that it was not going to have its expert testify that sperm matching Defendant was located anywhere on Victim. [12-1-23 CD 11:21:00-11] The district court then ruled that the State's expert could continue to refer to "sperm" when describing scientific processes and that it was necessary for the jury to understand the testimony. [12-1-23 CD 11:28:28-11:29:04] During the State's expert's remaining testimony, she did not use the word "sperm" when testifying regarding Defendant's specific DNA sample. [AB 13]

**{6}**     "[I]t is within the district court judge's discretion to revisit a ruling during the trial." *State v. Fernandez*, 2023-NMSC-005, ¶ 21, 528 P.3d 621. Here, that is exactly what happened. Defendant does not provide any argument contending that the district court's reversal of its prior decision was in error. We understand Defendant's argument to be premised on the assertion that the State's expert violated the district court's first order. However, given the confusion about the meaning of the first order, the district court's changed view of the testimony, and that the State's expert did not testify inconsistent with the district court's second oral order, we conclude that there was no inadmissible testimony presented to the jury, and therefore the district court did not abuse its discretion in denying the motion for a mistrial. *See State v. Smith*, 2001-NMSC-004, ¶ 32, 130 N.M. 117, 19 P.3d 254 (holding that the district court "is in a much better position to know whether a miscarriage of justice has taken place and [its] opinion is entitled to great weight in the absence of a clearly erroneous decision").

**{7}**     Defendant contends that the district court was required to cure the harm caused by the State's expert by admonishing the jury to disregard her statements or by providing a jury instruction to clarify the term before the jury deliberated. [BIC 14; RB 3-4] In doing so, Defendant relies on *State v. Simonson*, which states that "[t]he overwhelming New Mexico case law states that the prompt sustaining of the objection and an admonition to disregard the answer cures any prejudicial effect of inadmissible testimony." 1983-NMSC-075, ¶ 21, 100 N.M. 297, 669 P.2d 1092. However, as we have already concluded, the testimony of the State's expert was not inadmissible, and thus such actions were not required.

**{8}**     Additionally, while Defendant was moving for a mistrial, his defense counsel specifically stated that "this is something that can't be repaired by mentioning to the jury that they are not to consider it because that only highlights it." [12-1-23 CD 11:15:30-55] A few moments later Defense counsel also stated that "this is something that can't be fixed by any type of curative instruction" and "it's already out, you can't do anything to fix it." [12-1-23 CD 11:16:26-38] Even assuming the testimony was inadmissible, Defendant cannot argue on appeal that it was error for the district court not to do something that his trial counsel specifically stated it should not do below. *See State v. Jim*, 2014-NMCA-089, ¶ 22, 332 P.3d 870 ("It is well established that a party may not invite error and then proceed to complain about it on appeal.").

**{9}**     Defendant asserts that the challenged testimony might have confused the jury. [BIC 13; RB 2-3] However, both the State and Defendant's DNA experts clearly testified that the use of the term "sperm" in DNA testing does "not indicate the presence of seminal fluid" and no evidence indicated that Defendant's sperm cells were located anywhere on Victim. [BIC 7, 12] We therefore do not see how the jury would have been confused or that Defendant was prejudiced in any manner. *See State v. Flanagan*, 1990-NMCA-113, ¶ 8, 111 N.M. 93, 801 P.2d 675 (holding that a mistrial was properly denied where the possibility of prejudice was highly speculative and the defendant did not ask for prompt admonition).

**{10}** Defendant next challenges the sufficiency of the evidence supporting his conviction for CSP. [BIC 14-22] When reviewing for sufficiency, we view the evidence in the light most favorable to the verdict, then determine "whether the evidence viewed in this manner could justify a finding by any rational trier of fact that each element of the crime charged has been established beyond a reasonable doubt." *State v. Trossman*, 2009-NMSC-034, ¶ 16, 146 N.M. 462, 212 P.3d 350 (internal quotation marks and citation omitted). We "indulg[e] all reasonable inferences and resolv[e] all conflicts in the evidence in favor of the verdict." *State v. Chavez*, 2009-NMSC-035, ¶ 11, 146 N.M. 434, 211 P.3d 891 (internal quotation marks and citation omitted). In reviewing for sufficiency, "[t]he reviewing court does not weigh the evidence or substitute its judgment for that of the fact[-]finder as long as there is sufficient evidence to support the verdict." *Id.* (internal quotation marks and citation omitted).

**{11}** We look to the jury instructions to determine what the jury was required to find in order to convict Defendant. *See State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 ("The jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." (alterations, internal quotation marks, and citation omitted)). The jury instructions in this case required the State to prove that (1) Defendant caused Victim to engage in fellatio; (2) Victim was a child under the age of thirteen; (3) Defendant's act was unlawful; and (4) this happened in New Mexico on or about April 27, 2019. [3 RP 520] The jury was also provided with an instruction that defined fellatio as "the touching of the penis with the lips or tongue." [3 RP 521]

**{12}** The following evidence was presented at trial. Defendant's wife returned home from the store on April 27, 2019. [BIC 3] Defendant's wife thought Defendant had taken Victim, who was six-years-old at the time [AB 2], to the park, but discovered them upstairs in Victim's room. "As she stood in the doorway, she saw the back of [Defendant]'s head. Beyond [Defendant], [Victim] lay on the bed facing her. [Victim's] legs were apart and his shorts pulled down." [BIC 3] Victim's penis was in Defendant's mouth and Defendant was "rhythmically" bobbing his head up and down. [AB 4] *See State v. Hunter*, 1933-NMSC-069, ¶ 6, 37 N.M. 382, 24 P.2d 251 ("[T]he testimony of a single witness may legally suffice as evidence upon which the jury may found a verdict of guilt."). Defendant's wife stated to Defendant that he was "going to jail" and Defendant responded by stating to Victim: "See? I told you what would happen." [AB 4] After Defendant's wife took Victim downstairs and called 911, Defendant followed them and kept repeating to Victim that Victim was "never going to get to see [Defendant] again." [AB 4] During an interview with police, Defendant did not directly admit to abusing Victim, but made several statements that a reasonable fact-finder could have inferred as an admission to doing so. [AB 4-5] *See Chavez*, 2009-NMSC-035, ¶ 11. The State's expert testified that she performed a DNA analysis of swabs taken from Victim's cheek, mouth, anus, and penis area. [BIC 6] Defendant "could not be excluded as a contributor to the DNA on [Victim's] penis area." [BIC 6]

**{13}** Based on the above, we conclude that there was sufficient evidence to support each element of the CSP conviction beyond a reasonable doubt. Defendant does not appear to directly contend that this evidence was insufficient. Instead, Defendant argues

alternative interpretations of the DNA evidence, and asserts that Defendant's wife's testimony was unreliable due to an alleged motive to lie. [BIC 17-21] However, these were issues for the jury to determine, and we will not reweigh evidence on appeal. *See State v. Martinez*, 2008-NMCA-019, ¶ 3, 143 N.M. 428, 176 P.3d 1160 (recognizing that it is for the fact-finder to resolve any conflict in the testimony of the witnesses and to determine where the weight and credibility lie); *State v. Montoya*, 2005-NMCA-078, ¶ 3, 137 N.M. 713, 114 P.3d 393 ("When a defendant argues that the evidence and inferences present two equally reasonable hypotheses, one consistent with guilt and another consistent with innocence, our answer is that by its verdict, the jury has necessarily found the hypothesis of guilt more reasonable than the hypothesis of innocence."). Accordingly, we affirm Defendant's conviction for CSP.

**{14}   IT IS SO ORDERED.**

**KATHERINE A. WRAY, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**SHAMMARA H. HENDERSON, Judge**